UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SUNIL WALIA,

                          Plaintiff,

            -vs.-

JANET NAPOLITANO, as Secretary of the
United States Department of Homeland
Security,

                          Defendant.
---------------------------------------------------------X

FILED
CLERK

12/2/2013 10:35 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM OF
DECISION AND ORDER
11-cv-2512 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Law Offices of Louis D. Stober, Jr., LLC**
*Attorneys for the Plaintiff*
350 Old Country Road, Suite 205
Garden City, NY 11530
      By:  Louis D. Stober, Jr., Esq.
            Albina Kataeva, Esq., Of Counsel

**Kenneth M. Piken & Associates**
*Attorneys for the Plaintiff*
333 Jericho Turnpike
Suite 218
Jericho, NY 11753
      By:  Paul Bartels, Esq., Of Counsel

**Loretta E. Lynch**
United States Attorney Eastern District of New York
*Attorney for the Defendant*
610 Federal Plaza, 5th Floor
Central Islip, NY 11722-4454
      By:  Vincent Lipari, Assistant United States Attorney

**SPATT, District Judge**.

      On May 25, 2011, the Plaintiff Sunil Walia (the "Plaintiff") commenced this action

against the Defendant Janet Napolitano, as the former Secretary of the United States Department

1

of Homeland Security (the "DHS"), asserting (1) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; (2) intentional and negligent infliction of emotional distress; and (3) violations of the federal Privacy Act, 5 U.S.C. § 552a.

Pursuant to Local Rule 50.3.1(a), this case has been deemed related to another case, Walia v. Holder, et al., 12-cv-45944, which was commenced on December 3, 2012.  On November 18, 2013, that case was reassigned from United States District Judge Sandra L. Townes to this Court.  There was also another case brought by the Plaintiff against a prior Secretary of the DHS, Michael Chertoff. Walia v. Chertoff, 06-CV-6587 (JBW), 2008 WL 5246014 (E.D.N.Y. Dec. 17, 2008), which settled in December 2008.

In this case, presently pending before the Court is a motion by the DHS (1) for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 dismissing the Title VII cause of action; and (2) to dismiss the emotional distress and Privacy Act claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth, the motion is granted in part and denied in part.

## I.  BACKGROUND

The following facts are drawn from the parties Rule 56.1 statement and the pleadings and construed in a light most favorable to the Plaintiff.  Material disputes are noted.

The Plaintiff has at all times relevant to this action been employed by the DHS as a Special Agent in the U.S. Immigration Customs Service, Office of Investigations, John F. Kennedy International Airport Office.  The Plaintiff's race is Asian, his national origin is Indian, and his religion is Sikhism.

This litigation arises out of a March 13, 2008 incident involving a stop of an individual named Juan Bermudez.  The parties dispute whether Bermudez was under investigation for child pornography.

On that date, while returning on an inbound flight at JFK airport, Bermudez was stopped by Customs and Border Patrol Officer Wilson Olivencia.  At some point, the Plaintiff interviewed Bermudez and the Plaintiff retained, with Bermudez's written consent, custody of Bermudez's computer and CD/DVDs.

However, due to forgetfulness, the Plaintiff kept the computer and CD/DVDs locked in his bottom desk drawer from March 13, 2008 until October 1, 2008.  He did not tell anyone that he had these items, nor did he make any written entry or open a file indicating that he had them.

In September 2008, Special Agent Robert Raab, through an interview of Bermudez and a discussion with Olivencia, learned that the Plaintiff had Bermudez's items.  On October 1, 2008, Raab took custody of the computer and CD/DVDs.  Special Agent Christopher Doyle, a Certified Forensic Analyst, later found child pornography on the computer and CD/DVDs.  The Forensic Analysis Report also revealed that the computer had not been accessed since February 2006.

In October 2008, the Plaintiff received a negative annual performance appraisal, which referred to, among other things, the March 2008 laptop incident.  As a consequence, the Plaintiff made a formal complaint to the EEO.  In December 2008, the parties settled that dispute and the DHS agreed to "purge" the October 2008 annual performance appraisal from his official personnel folder.

In the interim, on November 17, 2008, Raab, and his supervisor, Dennis McSweeney, presented the Bermudez case for prosecution to Eastern District of New York Assistant U.S. Attorney Judy Philips, Chief of Intake and Arraignment.  Philips declined to accept the case,

apparently because the Plaintiff's mishandling of the evidence would be "Giglio" material that the United States would be obligated to disclose to the defense and which would compromise a prosecution.  According to the Plaintiff, McSweeney failed to disclose certain mitigating circumstances to Philips, including, among other things, that the computer had not been accessed since February 2006.

By memorandum dated November 24, 2008, McSweeney informed Special Agent In-Charge ("SAC") Peter Smith of the facts and circumstances leading up to the investigation and declination of prosecution of Bermudez.  On January 7, 2009, Smith forwarded a request to the Office of Professional Responsibility ("OPR") to investigate the Plaintiff's handling of the laptop computer and CD/DVDs retained from Bermudez.

On March 25, 2009, Group Supervisor Juan Figueroa, of the DHS's San Juan office, was assigned as a Fact Finder to conduct an administrative inquiry into the allegations contained in the January 2009 memorandum.  Figueroa personally interviewed and obtained affidavits from, among others, Raab and Olivencia.  Following this investigation, on August 11, 2009, Figueroa concluded:

> SA WALIA not only did not examine Bermudez's computer and or CDs/DVDs, but took no action to have the property analyzed by qualified personnel.  Furthermore SA WALIA admitted he "forgot" the computers in his desk, but made misleading statements . . .  suggesting that the property had been examined and no child pornography was found.  The allegations of false statements against SA WALIA is hereby SUBSTANTIATED.
>
> Additionally, this inquiry has revealed that SA WALIA was negligent and/or careless in the performance of his duties.  SA WALIA'S overall failure to properly manage the examination of Bermudez's property, had a negative impact on an official ICE investigation and substantially affected the prosecution of the case.  Consequently, Fact Finder Figueroa hereby determines that SA WALIA was negligent in performing his duties as a Senior Criminal Investigator.

(DHS's Rule 56.1 Statement, Exh B., at 12.)

4

By notice dated September 16, 2009, the Plaintiff was placed on paid administrative leave.  The notice explained that "[t]his action is being taken based on an administrative investigation relating to your handling of a laptop computer that was taken from a passenger at John F. Kennedy Airport." (Id., Exh E.)  The notice provided that Plaintiff was prohibited "from entering any and all [DHS] worksites or associated spaces for any purpose without prior appeal." (Id.)  The notice also stated that the Plaintiff had to relinquish all official government-issued credentials.

On September 17, 2009, the Plaintiff filed an appeal with the Merit System Protection Board ("MSPB").  The MSPB ultimately dismissed the Plaintiff's appeal for lack of jurisdiction.  The Plaintiff also filed a complaint with the Office of Special Counsel ("OSC").

By notice dated April 29, 2010, the DHS's Discipline and Adverse Actions Panel ("DAAP") proposed as further punishment the Plaintiff's removal from federal service for failure to properly safeguard potential evidence and lack of candor.  The Plaintiff disputed the underlying allegations, asserting that the DHS's actions were taken against him in retaliation for his previous EEO complaint.

On August 4, 2010, the Plaintiff contacted an EEO counselor to allege discrimination and retaliation by Smith and two other DHS officials.  In his "Informal EEO Complaint," filed on August 27, 2010, the Plaintiff alleged thirteen instances of discrimination or retaliation.  For example, the Plaintiff alleged that, during the period between January 2009 and September 2009, his work assignments were curtailed and limited to cases dealing with counterfeit goods.  The Plaintiff also alleged that, during the period between April 6, 2009 and April 17, 2009, he was required to attend a training course in investigating commercial fraud.  The Plaintiff also asserted that his placement on administrative leave in September 2009 denied him an opportunity to,

5

among other things, work and gain experience; compete for jobs, transfers, and promotions; earn language pay and a cash award; enter DHS worksites and associated spaces without prior approval; and come to the office to receive his annual performance appraisal.

Of relevance here, by letter dated November 9, 2010, DHS's EEO office dismissed as untimely all of the Plaintiff's claims that did not arise within the 45 days before the Plaintiff contacted the EEO counselor on August 4, 2010.

By decision dated November 4, 2010, the DAAP, through Claude Arnold, the SAC of the DHS's Los Angeles office, sustained the charges of mishandling potential evidence but not the charge of lack of candor.  Arnold imposed a 14-day suspension, which the Plaintiff served from November 8-21, 2010.

The Plaintiff subsequently filed a complaint statement with the New York District Office of the Equal Employment Opportunity Commission ("EEOC"), contending that the harassment faced by the Plaintiff was of a continuing nature.

On November 22, 2010, the Plaintiff was involuntarily and permanently transferred to the SAC/NY office.

On February 4, 2011, David Suna, who represented the DHS before the MSPB emailed SAC James Hayes the following statement:  "It is my understanding that the EEO investigator is interviewing management in the Walia case.  Just a reminder I am available to review affidavits. Feel free to let the relevant managers know or feel free to identify them for me and I can contact them directly." (Lipari Decl., Exh F.)  This email was later related to "all personnel."

Thereafter, the Plaintiff filed the instant action.  As noted above, the Plaintiff asserts claims for (1) Title VII violations; (2) intentional and negligent infliction of emotional distress; (3) Privacy Act violations.  Presently pending before the Court is the motion by the DHS for

partial summary judgment dismissing the Title VII claim and motion to dismiss the second and

third causes of action sounding in intentional and negligent infliction of emotional distress and

the federal Privacy Act.

## II. ANALYSIS

A.  <u>Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  The

court must view the facts in the light most favorable to the party opposing the motion.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.

2d 538 (1986).   It may disregard unsupported assertions of either party and review the record

independently. <u>See</u> <u>e.g.</u>, <u>Palmieri v. Lynch</u>, 392 F.3d 73, 83 (2d Cir. 2004) (finding that plaintiff

"introduced no evidence in opposing summary judgment to rebut the record evidence").

In a case alleging discrimination, the inquiry is whether the plaintiff's race, color, or

national origin "caused the conduct at issue often requires an assessment of individuals'

motivations and state of mind, matters that call for a sparing use of the summary judgment

device because of juries' special advantages over judges in this area." <u>Brown v. Henderson</u>, 257

F.3d 246, 251 (2d Cir. 2001) (internal citations and quotation marks omitted).  Nonetheless, an

employment discrimination plaintiff faced with a properly supported summary judgment motion

must do more than simply show that there is some metaphysical doubt as to the material facts.

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586.  He must present evidence sufficiently precise to

allow a reasonable jury to find in his favor. See McCarthy v. N.Y. City Technical College, 202 F.3d 161, 167 (2d Cir. 2000).

B.   Title VII

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against an employee for complaining about such discrimination. 42 U.S.C. § 2000e-3(a).  Title's VII's protections extend to employees of executive agencies. 42 U.S.C. § 2000e-16.

"Prior to bringing suit under . . . Title VII . . ., a federal government employee must timely 'exhaust the administrative remedies at his disposal.'" Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001) (per curiam) (quoting Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998)). "The process a federal employee must take to exhaust his or her administrative remedies is somewhat different than the process a private sector employee must follow." Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988, 11-CV-1416 (SLT)(LB), 2012 WL 3580399, at *6 (E.D.N.Y. Aug. 17, 2012).  Federal employees who believe that they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult an EEO Counselor prior to filing a complaint in order to try to informally resolve the matter. 29 C.F.R. § 1614.105(a).  The EEOC regulations require that an "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

8

In this case, the Plaintiff's Title VII allegations can be separated into four categories: (1) alleged wrongful accusation in January 2009 and the OPR investigation in June 2009; (2) assignment to training for 10 days in March 2009; (3) alleged discriminatory job assignments from January to September 2009; and (4) Plaintiff's placement on administrative leave on September 16, 2009.  Each of these allegations fall outside the 45-day time frame prior to the Plaintiff's initial contact with the EEO on August 4, 2010.

The Plaintiff first contends that he was not obligated to file an EEO charge for the previously delineated acts because they were retaliation for and are reasonably related to his October 2008 complaint filed with the EEO.  Thus, the Plaintiff maintains that all of his claims predating June 20, 2010, 45 days prior to August 4, 2010, are timely as they are reasonably related to his October 2008 EEO charge.

"Claims not raised in an EEOC [or EEO] complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006)(citing Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)).  The Second Circuit has identified three specific situations in which there is "reasonable relation": if "(1) the [new] claim would fall within the reasonably expected scope of an EEO[ ] investigation of the charges of discrimination; (2) [the new claim] alleges retaliation for filing the EEO[ ] charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEO[ ] charge.'" Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (quoting Butts, 990 F.2d at 1402–03).

As an initial matter, the Court notes that at no prior point has the Plaintiff alleged or otherwise contended that his claims predating June 20, 2010 resulted from retaliation for his filing the 2008 EEO charge.  In this regard, there is no mention in the complaint of the October

2008 EEO charge, let alone that the claims predating June 20, 2010 were taken to retaliate for filing that charge. Indeed, despite his newly-made claim that he was not obligated to do so, the Plaintiff in fact attempted to exhaust his claims predating June 20, 2010. In particular, responding to the EEOC's November 9, 2010 letter dismissing certain claims as untimely, the Plaintiff did not then, as he does now, claim that he was under no obligation to exhaust. Rather, the Plaintiff argued that the claims were timely as part of a continuing violation.

Further, even if the Plaintiff previously alleged that the claims predating June 20, 2010 were based on retaliation for the October 2008 EEO charge, such claims are untimely because the Court finds that they are not reasonably related to those in the 2008 EEO charge. The 2008 EEO charge alleges that the Plaintiff's supervisor, Joseph Lestrange, discriminated against the Plaintiff by: threatening to charge plaintiff with insubordination because he asked for an explanation of why he was assigned to an out-of-state detail; assigning plaintiff to a detail that other agents had not been assigned to; counseling plaintiff over release of official information; ranking him lower than several other agents on a spread sheet; ordering him to attend a training detail in Washington D.C. while knowing he was scheduled for an interview with the Magistrate Judge in his last court case; and compromising his safety by not informing him of an OPR and DEA investigation. (Lipari Reply Decl, Exh A.)

It is true, as the Plaintiff asserts, that he amended the October 2008 EEO charge by letter dated October 21, 2008 to refer to "misstated" facts in his annual appraisal. While the appraisal mentioned that the Plaintiff failed to follow up on the seizure of the laptop computer, the EEO charge and the amendment failed to specify the misstatements of fact. Accordingly, the Plaintiff's October 21, 2008 letter did not provide the EEO with sufficient notice that would make his October 2008 EEO charge reasonably related to the claims predating June 20, 2010.

10

<u>Williams v. New York City Housing Authority</u>, 458 F.3d 67, 70 (2d Cir. 2006) ("the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.  The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate . . .") (citations and internal quotation marks deleted).

The Plaintiff also contends, as he did before the EEO, that the discriminatory acts predating June 20, 2010 are part of a hostile work environment or a continuing violation and are therefore not barred by the 45-day time bar.  Assuming that at least one discriminatory or retaliatory act occurred within the statutory time-period, the continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 765 (2d Cir. 1998) (internal citations and quotations omitted).  The Supreme Court articulated the proper use of the continuing violation exception in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), holding that discrete discriminatory acts, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113, 122 S. Ct. 2061.  "The rationale behind the 'discrete act' rule is that when a plaintiff is harmed by a discrete act, he should be aware of it; '[t]o permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed . . . would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.'" <u>Stephens v. Hofstra Univ. School of Law</u>, No. 01 Civ. 5388(DRH)(MLO), 2005 WL

1505601, at *4 (E.D.N.Y. Jun. 24, 2005) (quoting Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980)).

It is well-settled that certain adverse employment practices such as undesirable work transfers and denial of preferred job assignments are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination. See Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 89 (2d Cir. 2003) (citing Morgan, 536 U.S. at 114–15, 122 S. Ct. 2061); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) (finding job transfer and discontinuance of a particular job assignment are not acts of a continuing nature); Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001) ("It is well settled law that transfers [and] demotions . . . are all discrete acts which do not constitute a continuing violation.").  In such cases, "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114, 122 S. Ct. 2061.

Similarly, "[p]lacing plaintiff on leave was a discrete act affecting h[is] employment." Ramos-Boyce v. Fordham Univ., 419 F. Supp. 2d 469, 472 (S.D.N.Y. 2005).  Also time-barred are the Plaintiff's assertions that because he was on administrative leave, he was denied the opportunity to compete for jobs, transfers, and promotions; to acquire on-the-job experience; to earn language pay and a cash award; and to enter DHS worksites and associated spaces without prior approval. Harris v. S Huntington Sch. Dist., 2009 U.S. Dist. LEXIS 27392 (DGT), at *27, 2009 WL 875538 (E.D.N.Y. Mar. 30, 2009) (dismissing claims arising out of, among other things, the defendants' discrete act of "reassigning [plaintiff] to work the night shift ... effectively denying him the opportunity to work overtime" as untimely).  Indeed, these issues were "a direct

result of his suspension with pay, not an additional action taken by his employer." Brown v. City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012).

In addition, the Court finds that the allegation regarding the compulsory training is time-barred because a requirement to train is a discrete act. Perkins v. Promoworks, L.L.C., CIV.A. H-11-442, 2012 WL 6530137, at *6 (S.D. Tex. Nov. 26, 2012)("Plaintiff has identified only discrete acts as the discriminatory employment actions from which her complaint is derived [such as] requiring her to train non-black coworkers."), report and recommendation adopted, CIV.A. H-11-442, 2012 WL 6530103 (S.D. Tex. Dec. 13, 2012).

Also, the Court finds that the Plaintiff's allegation regarding his placement on administrative leave is not timely, even though the Plaintiff remained on administrative leave after he filed his EEO complaint.  Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 135 (2d Cir. 2003)("The rejection of a proposed accommodation is a single completed action when taken . . . [a]lthough the effect of the employer's rejection continues to be felt by the employee for as long as he remains employed."); Guerrero v. FJC Sec. Servs. Inc., 10 CIV. 9027 (JPO), 2012 WL 2053535, at *3 (S.D.N.Y. June 5, 2012)("Though Plaintiff continued thereafter to feel the effects of this assignment, the assignment occurred in May 2009.  To complain of this assignment in federal court, Plaintiff had first to complain of the assignment in an EEOC charge within 300 days.")

Indeed, in a similar case to the case at bar, this Court stated:

Here, the Plaintiff alleges that the Defendant retaliated against her immediately upon her return to work in January of 2002 by placing her on the second floor, which was in violation of the 2001 settlement agreement, and which exposed her to harmful toxins.  These allegations of undesirable work transfers constitute discrete acts that are not actionable under the continuing violation doctrine. Nevertheless, the Plaintiff contends these actions fall within the continuing violation doctrine because every day that she remained employed and was not placed on the third floor in compliance with the 2001 settlement agreement

> constituted retaliation. However, a failure to remedy a discrete act of retaliation, which is a one-time event, does not rise to the level of a discriminatory policy or practice. As the Supreme Court held in <u>Morgan</u>, the "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."

<u>Robles v. Cox & Co., Inc.</u>, 841 F. Supp. 2d 615, 628 (E.D.N.Y. 2012)(Spatt, J.)(citation omitted).

The Plaintiff also contends that, pursuant to 29 C.F.R. § 1614.302, by filing an "appeal" with MSPB on September 17, 2009, he is deemed to have made an initial contact with an EEO counselor on that date and, thus, his claims of retaliation for being placed on indefinite administrative leave are timely. The Court disagrees.

A federal employee may accomplish administrative exhaustion of his Title VII claim by either filing a complaint with the agency's Equal Employment Opportunity office or by administratively filing a "mixed case appeal," which includes both discrimination and non-discrimination claims, directly with the MSPB. <u>Butler v. West</u>, 164 F.3d 634, 638 & n. 6 (D.C. Cir. 1999). The plaintiff argues that he exhausted his administrative remedies through the latter route.

Under 5 U.S.C. § 7702, a mixed case is one in which the employee "has been affected by an action which the employee . . . may appeal to the [MSPB], and alleges that a basis for the action was discrimination prohibited by" Title VII, among other statutes. § 7702(a)(1). An employee may appeal only five types of employment actions directly to the MSPB: (1) removal, (2) suspension for more than fourteen days, (3) reduction in grade, (4) reduction in pay, and (5) a furlough of thirty days or less. § 7512. Thus, in order to bring a mixed case appeal before the MSPB, and thus to exhaust his administrative remedies through a mixed case appeal, a plaintiff must allege that the defendant has taken one of the five designated actions against him and that

14

"a basis for the action was discrimination" in violation of Title VII. See Cruz v. Dep't of the Navy, 934 F.2d 1240, 1243-46 (Fed. Cir. 1991) (en banc); Dews–Miller v. Clinton, 707 F. Supp. 2d 28, 44–45 (D.D.C. 2010); Greenhouse v. Geren, 574 F. Supp. 2d 57, 65–67 (D.D.C. 2008); Marren v. DOJ, 51 M.S.P.R. 632, 638–40 (1991), aff'd, 980 F.2d 745 (Fed. Cir. 1992).   "As far as the Court can discern from the convoluted allegations in his complaint, none of these enumerated employment actions have been taken against the plaintiff.  Consequently, the [P]laintiff has not properly filed a mixed case appeal with the MSPB, and therefore, has not exhausted his Title VII administrative remedies." Abou-Hussein v. Mabus, CIV.A. 12-0913 RBW, 2013 WL 3753553, at *5 (D.D.C. July 17, 2013).

The Plaintiff also argues that he was not required to contact an EEO counselor because his MSPB appeal placed David Suna, who represented the DHS before the MSPB, on notice of his EEO claims.  "The EEOC has held that in order to "initiate contact" an employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to initiate the EEO process; and (3) allege that an incident in question is based on discrimination." Lewis v. Snow, 01 CIV. 7785 (CBM), 2003 WL 22077457, at *6 (S.D.N.Y. Sept. 8, 2003).

Here, even if Suna was logically connected to the EEO process, the Plaintiff's MSPB appeal did not evince his intent to initiate EEO proceedings.  To the contrary, because a person filing a "mixed case appeal" must elect between MSPB proceedings or EEO proceedings, 29 C.F.R. § 1614.302(b), the Plaintiff's filing was notice that he did not intend to initiate EEO proceedings. See e.g., White v. Geithner, 602 F. Supp. 2d 35, 37 (D.D.C. 2009) ("[plaintiff] knew the mediation process and the EEO process were different and she knew she was electing to pursue mediation rather than the EEO process.  Therefore, the uncontroverted evidence does

not support White's assertion that she intended to begin the EEO process during her meeting with Cymbor.").

Finally, the Plaintiff suggests that his filing with the Office of Special Counsel satisfied the requirement of initiating contact with an EEO counselor.  However, "a complainant's contact with the OSC does not toll the 45-day time limit for contacting an EEO Counselor." David L. Wadley, Complainant, EEOC DOC 0520120552, 2013 WL 393651, at *2 (Jan. 15, 2013); Schmidt v. Dep't of the Army, EEOC Appeal No. 0120110320 (Feb. 25, 2011); Sofair v. Dep't of the Navy, 0120092486 (Sept. 24, 2009); Wilson v. Dep't of Hous. & Urban Dev., EEOC Appeal No. 01A55956 (Mar. 10, 2006); Steinert v. Dep't of Veterans Affairs, EEOC Request No. 05960535 (Oct. 9, 1997).

In sum, the Court finds that, as a matter of law, the Plaintiff failed to timely exhaust his administrative remedies as a prerequisite to his Title VII claim.  Accordingly, the Court grants the DHS's motion for partial summary judgment dismissing that cause of action.

C.  Motion to Dismiss Standard

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005); Rosen v. North Shore Towers Apts., Inc., 2011 WL 2550733, *2 (E.D.N.Y. June 27, 201 l) (12(b)(l)).  To survive a motion to dismiss pursuant to Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with

16

the allegations in the complaint." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Therefore, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  However, a pleading that offers only 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  Thus, while detailed factual allegations are not required, the pleading rules do require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted).

The Supreme Court clarified the appropriate pleading standard in <u>Iqbal</u>, setting forth a two-pronged approach for courts deciding a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Id.</u>  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 678 (quoting and citing <u>Twombly</u>, 550 U.S. at 556) (internal citations omitted).

D.  Intentional and Negligent Infliction of Emotional Distress

As noted above, the Plaintiff also alleges a claim for intentional and negligent infliction of emotional distress.  However, "[c]ourts have refused to permit the invocation of state law remedies to circumvent the exclusivity of Title VII as a remedy for discrimination in federal employment." Lewis v. Snow, No. 01 Civ. 7785, 2003 WL 22077457 (CBM), at *11 (S.D.N.Y. Sept.8, 2003) (citations omitted); Spinelli v. Sec'y of Dep't of Interior, No. 99–CV–8163, 2006 WL 2990482, at *9–10 (E.D.N.Y. Oct.19, 2006) ("[P]ermitting federal employees to invoke state law remedies for claims of employment discrimination would work an impermissible end-run around Title VII's administrative requirements . . . . Here, plaintiffs attempt such an 'end-run' around Title VII: plaintiffs' state law tort claims derive solely from the alleged workplace discrimination underlying their federal law claims." )(internal quotation marks and citations omitted); cf. Bolden v. Potter, CIV3:07CV785 (AWT), 2010 WL 1286756, at *11 (D. Conn. Mar. 29, 2010) ("[The Plaintiff]'s intentional infliction of emotional distress claim is not a claim of discrimination, and so it is not duplicative of her Title VII claim.").

The Plaintiff insists that he does not allege the same factual basis for these state law claims as he does for his employment discrimination claim.  In this regard, in his memorandum in opposition to the motion to dismiss, the Plaintiff asserts that "the record" makes clear that the DHS intentionally and negligently inflicted emotional distress on him by failing to promptly render a decision on DAAP's recommendation of removal.  The Plaintiff points to the testimony of SAC Arnold, who apparently assured the Defendant that he would take 14 days to make a decision.  Instead of taking 14 days to make a decision, the DHS took 110 days.  The Plaintiff asserts that, as a result, he suffered extreme deep sleep deprivation, physical neck and back pain,

and extreme anxiety and stress.  Based on these allegations, the Plaintiff asserts that "a question

of fact" remains as to this cause of action.

However, because "the court is limited to the pleadings in reviewing a motion to dismiss

under Fed. R. Civ. P. 12(b)(6)," Knight v. S. New England Tel. Corp., 3:97CV1159 (WWE),

1998 WL 696014, at *5 (D. Conn. Sept. 18, 1998), the Plaintiff's reliance on the record and in

particular – Arnold's deposition testimony – is inapposite.  Count II of the complaint provides, in

its entirety:

> 133. Plaintiff repeats and realleges each and every allegation set forth in
> paragraphs 1-127 inclusive as if fully set forth herein.
>
> 134. The actions alleged in paragraphs 1-127 above constitute the
> intentional and negligent infliction of emotional distress upon the
> Plaintiff.

As these generalized allegations reveal, the Plaintiff's claim of intentional and negligent

infliction of emotional distress is part and parcel of his prior allegations of discrimination.

In the Court's view, the Plaintiff failed to put the DHS on notice of any claim that the delay in

DAAP decision aggrieved the Plaintiff.  Further, given that the Plaintiff's injuries were within

his own knowledge and control, the Plaintiff "cannot amend [his] complaint by asserting new

facts or theories for the first time in opposition to Defendants' motion to dismiss." K.D. ex rel.

Duncan v. White Plains School Dist., No.11 CIV.6756 (ER), 2013 WL 440556, at *14 n. 8

(S.D.N.Y. Feb. 5, 2013) (citing Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812

F. Supp. 2d 357, 363 n. 9 (S.D.N.Y. 2011); Scott v. City of New York Dep't of Corr., 641 F.

Supp. 2d 211, 229 (S.D.N.Y. 2009), aff'd, 445 F. App'x 389 (2d Cir. 2011)).

In any event, even if the Court was to convert the motion to dismiss the emotional

distress claim *sua sponte* to a motion for partial summary judgment and to consider matters

outside the pleadings or even had the Plaintiff alleged in the complaint that the delay in the

DAAP's recommendation of removal constituted intentional and negligent infliction of emotional distress as separate from his employment discrimination claim, the Court finds that the Plaintiff failed to exhaust his administrative remedies as required under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 because he did not file his administrative claim with the DHS within the two-year limitation period set forth in 28 U.S.C. § 2401(b).

This "presentment" requirement is contained in 28 U.S.C. § 2675(a), which is designed "to provide a procedure under which the government may investigate, evaluate, and consider settlement of a claim." Johnson by Johnson v. United States, 788 F.2d 845, 848 (2d Cir. 1986) (quoting Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983)); overruled on other grounds by Sheridan v. United States, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988). Therefore, in order to satisfy § 2675(a)'s presentment requirement, the claimant must file a notice of claim that provides "enough information to permit the agency to conduct an investigation and to estimate the claim's worth." Romulus v. United States (Romulus II ), 160 F.3d 131, 132 (2d Cir. 1998) (citing Keene Corp., 700 F.2d at 842), aff'g Romulus v. United States (Romulus I ), 983 F. Supp. 336, 338 (E.D.N.Y. 1997). The notice need not meet formal pleading requirements as long as it is specific enough to serve the purposes underlying § 2675(a) – "to ease court congestion and avoid unnecessary litigation while making it possible for the Government to expedite the fair settlement of tort claims" asserted against the United States. Romulus I, 983 F. Supp. at 338 (quoting Johnson by Johnson, 788 F.2d at 848–49). A claimant must provide "more than conclusory statements which afford the agency involved no reasonable opportunity to investigate." Romulus II, 160 F.3d at 132. Although compliance with § 2675(a) is "strictly construed," Furman v. U.S. Postal Serv., 349 F. Supp. 2d 553, 557 (E.D.N.Y. 2004) (quoting Romulus I, 983 F. Supp. at 338), plaintiff need only "provide notice of his claim and a sum

certain," and need not "provide full substantiation of his claim according to the more exacting settlement regulations." State Farm, 326 F. Supp. 2d at 414.

Further, the FTCA administrative exhaustion rule is a jurisdictional requirement which cannot be waived. See Millares v. United States, 137 F.3d 715, 720 (2d Cir. 1998); Morales v. United States, 38 F.3d 659, 660 (2d Cir. 1994); Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983) cert. den. 464 U.S. 864, 104 S. Ct. 195, 78 L. Ed. 2d 171 (1983).

Here, the Plaintiff submitted an SP-95 Form to the DHS on May 24, 2011. While the claim form directs claimants to "[s]tate in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof" (emphasis added), the Plaintiff's claim only stated "I am employed by DHS. DHS intentionally engaged in harassment, retaliation and discrimination causing damage and injury." (Lipari Reply Decl., Exh C.)

In any case, the mere filing of a Form 95 is not necessarily sufficient to satisfy presentment. Romulus II, 160 F.3d at 132 ("[T]he mere act of filing a SF 95 does not necessarily fulfill the presentment requirement of § 2675(a)."); Romulus I, 983 F. Supp. at 341 ("Although plaintiffs apparently assume that filing of a Form 95 is sufficient ... the case law is not settled on this point."); see also Furman, 349 F. Supp. 2d at 558 (quoting Romulus II, 160 F.3d at 132). Rather, presentment requires the claimant to present evidence sufficient to allow the agency to investigate and evaluate the claim with an eye toward determining whether to settle the claim or deny it. Romulus II, 160 F.3d at 132; Johnson by Johnson, 788 F.2d at 848–49. The sufficiency of the claimant's notice depends on the information he provides, and different information will be required to satisfy presentment based on the facts of each case. See State Farm, 326 F. Supp. 2d at 412–13 ("[T]he adequacy of notice to an agency is dependent upon the sufficiency of

21

information provided by the plaintiff.  Sometimes, if the information is vague, or suggestive of a vast array of possible claims, the information provided by the plaintiff gives no notice to the agency.")

The "Plaintiff may well have suffered emotional distress stemming from employment discrimination, but the exclusivity of Title VII and the failure to present any tort claims to the [DHS] require h[im] to pursue relief through [other avenues]." Cole-Hoover v. Shinseki, 10-CV-669A, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011).  Accordingly, the Court grants the Defendants' Rule 12(b)(6) motion with respect to the common law claims for intentional and negligent infliction of emotional distress.

E.  Privacy Act

Finally, the Plaintiff claims a violation of the Privacy Act, 5 U.S.C. § 552a.  In particular, the Plaintiff alleges that the Defendants violated the Privacy Act because, "[u]pon information and belief, on or about February 14, 2011 . . . . [defendant] advised personnel who had 'no need to know' about [the Plaintiff's] EEO activity." Compl. ¶ 127.  The personnel allegedly advised were "individuals in the New York/JFK duty station without written or verbal permission of [the] Plaintiff." Id. ¶ 136.

Under the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b).  A "'record' has a broad meaning encompassing, at the very least, any personal information about an individual that is linked to that individual through an identifying particular." Rivera, 400 F. Supp. 2d at 409.

22

Properly framed and contrary to the DHS's contention, "the emails in this case are the method of disclosure, not the source of the Privacy Act protected material." <u>Minshew v. Donley</u>, 911 F. Supp. 2d 1043, 1071 (D. Nev. 2012). Rather, the source of the alleged Privacy Act material was the DHS's information contained in employment/personnel files – namely, the Plaintiff's EEO activity. Given the broad definition of the term "record" under the Privacy Act, the Court finds that this information may qualify as "records" because they identify the Plaintiff by name and contain information about a prospective investigation premised on the Plaintiff's alleged misconduct.

However, only "records" retrieved from "systems of records" are subject to the Privacy Act. A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). Thus, to be covered by the Privacy Act, a record must actually be retrieved from a system of records by using a personal identifier. <u>Henke v. U.S. Dep't of Commerce</u>, 83 F.3d 1453, 1460–61 (D.C. Cir. 1996) (retrieval capability is not sufficient to create a system of records; to be in a system of records, a record must in practice be retrieved by an individual's name or other personal identifier).

In this case, the Court finds that the DHS's personnel records may qualify as a "system of records" within the meaning of the Privacy Act. <u>Parks v. United States Internal Revenue Service</u>, 618 F.2d 677, 682-83 (10th Cir. 1980) (fact that personnel files are systems of record" was uncontroverted); <u>Howard v. Marsh</u>, 596 F. Supp. 1107, 1110 (E.D. Mo. 1984) ("Many of the documents incorporated in management's rebuttal memorandum were contained in plaintiff's personnel file and the EEO files maintained by defendant. Clearly, these documents were name

retrievable and thus were within a "system of records" maintained by defendant), rev'd on other grounds, 785 F.2d 645 (8th Cir. 1986); Jackson v. Veterans Admin., 503 F. Supp. 653, 655 (N.D. Ill. 1980)(the "defendant concedes that the plaintiff's personnel file ('OPF') is such a system of records within the meaning of the Privacy Act").

To be sure, exemptions from liability under the Privacy Act include intra-agency disclosures among employees "who have a need for the record in the performance of their duties." Id. § 552a(b)(1); Williams v. Reilly, 743 F. Supp. 168, 175 (S.D.N.Y. 1990); Clarkson v. Internal Revenue Serv., 811 F.2d 1396, 1398 (11th Cir. 1987)(intra-agency disclosure "is not the evil against which the Privacy Act was enacted.")  In considering a disclosure under this exception, "[w]hat must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly." Doe v. U.S. Dep't of Justice, 660 F. Supp. 2d 31, 44–46 (D.D.C. 2009); see e.g., Viotti v. U.S. Air Force, 902 F. Supp. 1331, 1337 (D. Colo. 1995) (holding that the disclosure of information about acting head of political science department to "political science department staff" not improper "as a matter of law" under need to know exception).

Here, the Plaintiff adequately alleges that the disclosure regarding his EEO complaint was not on a "need to know" basis for the employees to perform their duties. (Compl., at ¶ 127.) Indeed, the Court notes that discovery has revealed that the emails were sent to several individuals who were encouraged to share it without restriction, though such a showing is not required to withstand a motion to dismiss.  Accordingly, the Court denies the DHS's motion to dismiss the Plaintiff's Privacy Act claim.

24

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that that part of the DHS's motion for partial summary judgment dismissing

the Title VII claim is granted and that claim is dismissed with prejudice; and it is further

**ORDERED**, that the part of the DHS's motion to dismiss the Plaintiff's intentional and

negligent infliction of emotional distress claim is granted and those claims are dismissed

with prejudice; and it is further

**ORDERED**, that the DHS's motion to dismiss the Plaintiff's Privacy Act claim is

denied.

**SO ORDERED.**
Dated: Central Islip, New York
December 2, 2013


_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge