FILED
CLERK

2/4/2014 1:25 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SUNIL WALIA,

                      Plaintiff,

        -vs.-

JANET NAPOLITANO, as Secretary of the
United States Department of Homeland
Security,

                     Defendant.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-cv-2512 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Law Offices of Louis D. Stober, Jr., LLC**
*Attorneys for the Plaintiff*
350 Old Country Road, Suite 205
Garden City, NY 11530
    By:  Louis D. Stober, Jr., Esq.
        Albina Kataeva, Esq., Of Counsel

**Kenneth M. Piken & Associates**
*Attorneys for the Plaintiff*
333 Jericho Turnpike
Suite 218
Jericho, NY 11753
    By:  Paul Bartels, Esq., Of Counsel

**Loretta E. Lynch**
United States Attorney Eastern District of New York
*Attorney for the Defendant*
610 Federal Plaza, 5th Floor
Central Islip, NY 11722-4454
    By:  Vincent Lipari, Assistant United States Attorney

**SPATT, District Judge**.

      On May 25, 2011, the Plaintiff Sunil Walia (the "Plaintiff") commenced this action

against the Defendant Janet Napolitano, as the former Secretary of the United States Department

of Homeland Security (the "DHS"), asserting (1) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; (2) intentional and negligent infliction of emotional distress; and (3) violations of the federal Privacy Act, 5 U.S.C. § 552a.  Familiarity with the prior orders of this Court is assumed.

However, by way of background, the Plaintiff has at all times relevant to this action been employed by the DHS as a Special Agent in the U.S. Immigration Customs Service, Office of Investigations, John F. Kennedy International Airport Office.  The Plaintiff's race is Asian, his national origin is Indian, and his religion is Sikhism.

This litigation arises out of a March 13, 2008 incident involving a stop of an individual named Juan Bermudez.  The parties dispute whether Bermudez was under investigation for child pornography.

On that date, while returning on an inbound flight at JFK airport, Bermudez was stopped by Customs and Border Patrol Officer Wilson Olivencia.  At some point, the Plaintiff interviewed Bermudez and, with Bermudez's written consent, the Plaintiff retained custody of Bermudez's computer and CD/DVDs.

However, due to forgetfulness, the Plaintiff kept the computer and CD/DVDs locked in his bottom desk drawer from March 13, 2008 until October 1, 2008.  He did not tell anyone that he had these items, nor did he make any written entry or open a file indicating that he had them.

In September 2008, Special Agent Robert Raab, through an interview of Bermudez and a discussion with Olivencia, learned that the Plaintiff had the Bermudez items.  On October 1, 2008, Raab took custody of the computer and CD/DVDs.  Special Agent Christopher Doyle, a Certified Forensic Analyst, later found child pornography on the computer and CD/DVDs.  The

Forensic Analysis Report also revealed that the computer had not been accessed since February 2006.

In October 2008, the Plaintiff received a negative annual performance appraisal, which, among other things, referred to the March 2008 laptop incident.  As a consequence, in December 2008, the Plaintiff made a formal complaint with regard to the March 2008 laptop incident to the Equal Employment Opportunity Office ("EEO").  In December 2008, the parties settled that dispute and the DHS agreed to "purge" the October 2008 annual performance appraisal from his official personnel folder.

In the interim, on November 17, 2008, Raab, and his supervisor, Dennis McSweeney, presented the Bermudez case for prosecution to Eastern District of New York Assistant U.S. Attorney Judy Philips, Chief of Intake and Arraignment.  Philips declined to accept the case, apparently because the Plaintiff's mishandling of the evidence would be "Giglio" material that the United States would be obligated to disclose to the defense which would compromise a prosecution.  According to the Plaintiff, McSweeney failed to disclose certain mitigating circumstances to Philips, including, among other things, that the computer had not been accessed since February 2006.

By memorandum dated November 24, 2008, McSweeney informed Special Agent In-Charge ("SAC") Peter Smith of the facts and circumstances leading up to the investigation and declination to prosecute Bermudez.  On January 7, 2009, Smith forwarded a request to the Office of Professional Responsibility ("OPR") to investigate the Plaintiff's handling of the laptop computer and CD/DVDs obtained from Bermudez.

On March 25, 2009, Group Supervisor Juan Figueroa, of the DHS's San Juan office, was assigned as a Fact Finder to conduct an administrative inquiry into the allegations contained in

3

the January 2009 memorandum.  Figueroa personally interviewed and obtained affidavits from,

among others, Raab and Olivencia.  Following this investigation, on August 11, 2009, Figueroa

concluded:

> SA WALIA not only did not examine Bermudez's computer and or
> CDs/DVDs, but took no action to have the property analyzed by qualified
> personnel.  Furthermore SA WALIA admitted he "forgot" the computers
> in his desk, but made misleading statements . . .  suggesting that the property
> had been examined and no child pornography was found.  The allegations of
> false statements against SA WALIA is hereby SUBSTANTIATED.
>
> Additionally, this inquiry has revealed that SA WALIA was negligent
> and/or careless in the performance of his duties.  SA WALIA'S overall
> failure to properly manage the examination of Bermudez's property, had
> a negative impact on an official ICE investigation and substantially affected
> the prosecution of the case.  Consequently, Fact Finder Figueroa hereby
> determines that SA WALIA was negligent in performing his duties as a
> Senior Criminal Investigator.

(DHS's Rule 56.1 Statement, Exh B., at 12.)

By notice dated September 16, 2009, the Plaintiff was placed on paid administrative

leave.  The notice explained that "[t]his action is being taken based on an administrative

investigation relating to your handling of a laptop computer that was taken from a passenger at

John F. Kennedy Airport." (Id., Exh E.)  The notice provided that Plaintiff was prohibited "from

entering any and all [DHS] worksites or associated spaces for any purpose without prior appeal."

(Id.)  The notice also stated that the Plaintiff had to relinquish all official government-issued

credentials.

On September 17, 2009, the Plaintiff filed an appeal with the Merit System Protection

Board ("MSPB").  The MSPB ultimately dismissed the Plaintiff's appeal for lack of jurisdiction.

The Plaintiff also filed a complaint with the Office of Special Counsel ("OSC").

By notice dated April 29, 2010, the DHS's Discipline and Adverse Actions Panel

("DAAP") proposed as further punishment the Plaintiff's removal from federal service for failure

to properly safeguard potential evidence and lack of candor.  The Plaintiff disputed the underlying allegations, asserting that the DHS's actions were taken against him in retaliation for his previous EEO complaint.

On August 4, 2010, the Plaintiff contacted an EEO counselor to allege discrimination and retaliation by Smith and two other DHS officials.  In his "Informal EEO Complaint," filed on August 27, 2010, the Plaintiff alleged thirteen instances of discrimination or retaliation.  For example, the Plaintiff alleged that, during the period between January 2009 and September 2009, his work assignments were curtailed and limited to cases dealing with counterfeit goods.  The Plaintiff also alleged that, during the period between April 6, 2009 and April 17, 2009, he was required to attend a training course in investigating commercial fraud.  The Plaintiff also asserted that his placement on administrative leave in September 2009 denied him an opportunity to, among other things, work and gain experience; compete for jobs, transfers, and promotions; earn language pay and a cash award; enter DHS worksites and associated spaces without prior approval; and come to the office to receive his annual performance appraisal.

Of relevance here, by letter dated November 9, 2010, DHS's EEO office dismissed as untimely all of the Plaintiff's claims that did not arise within the 45 days before the Plaintiff contacted the EEO counselor on August 4, 2010.

By decision dated November 4, 2010, the DAAP, through Claude Arnold, the SAC of the DHS's Los Angeles office, sustained the charges of mishandling potential evidence but not the charge of lack of candor.  Arnold imposed a 14-day suspension, which the Plaintiff served from November 8 to November 21, 2010.

5

The Plaintiff subsequently filed a complaint statement with the New York District Office of the Equal Employment Opportunity Commission ("EEOC") on or about November 22, 2010, contending that the harassment faced by the Plaintiff was of a continuing nature.

On November 22, 2010, the Plaintiff was involuntarily and permanently transferred to the SAC/NY office.

Thereafter, the Plaintiff filed the instant action.  As noted above, the Plaintiff asserted claims for (1) Title VII violations; (2) intentional and negligent infliction of emotional distress; and (3) Privacy Act violations.  DHS moved for partial summary judgment dismissing the Title VII claims and to dismiss the second and third causes of action sounding in intentional and negligent infliction of emotional distress and the Privacy Act.

By Memorandum and Order dated December 2, 2013, this Court (1) granted DHS's motion for partial summary judgment dismissing the Title VII claims; (2) granted DHS's motion to dismiss the intentional and negligent infliction of emotional distress claim; and (3) denied DHS's motion to dismiss the Privacy Act claim.

Of relevance here, the Court held that the Plaintiff's Title VII allegations could be separated into four categories: (1) alleged wrongful accusation in January 2009 and the OPR investigation in June 2009; (2) assignment to training for 10 days in March 2009; (3) alleged discriminatory job assignments from January to September 2009; and (4) Plaintiff's placement on administrative leave on September 16, 2009.

The Court found that each of these allegations occurred more than 45 days prior to the Plaintiff's initial contact with the EEO on August 4, 2010 and, therefore, "the Plaintiff failed to timely exhaust his administrative remedies as a prerequisite to his Title VII claim." (Mem & Order, at 16.)  The Court rejected the Plaintiff's argument that these claims were "reasonably

related" to his October 2008 EEO charge.  The Court acknowledged that the Plaintiff amended the October 2008 EEO charge to refer to "misstated" facts in his annual appraisal, which itself mentioned that the Plaintiff failed to follow up on the seizure of the laptop computer.  However, the Court held that "the EEO charge and the amendment failed to specify the misstatements of fact," and therefore, the amendment "did not provide the EEO with sufficient notice that would make his October 2008 charge reasonably related to the claims predating June 20, 2010." (<u>Id.</u> at 10.)

Similarly, the Court rejected the Plaintiff's argument that the discriminatory acts predating June 20, 2010 were part of a hostile work environment or a continuing violation and were therefore not barred by the 45-day time bar.  Citing relevant case law, the Court held that undesirable work transfers; denial of preferred job assignments; placement on administrative leave; and compulsory training "are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination." (<u>Id.</u> at 12.)

On December 16, 2013, the Plaintiff moved pursuant to Local Rule 6.3 for reconsideration of that part of the Memorandum and Order dated December 2, 2013 as granted the Defendants' motion for partial summary judgment dismissing the Title VII claims.  For the following reasons, the Court grants in part and denies in part the motion for reconsideration.

As an initial matter, the Plaintiff seeks clarification that the Plaintiff's Title VII claims which occurred on or after June 20, 2010 were not dismissed because those claims are, in fact, timely.  DHS does not dispute this assertion.  Accordingly, the Court grants the motion for reconsideration to the extent the Court makes clear that those events which occurred on or after June 20, 2010 remain a part of the Plaintiff's Title VII claims.

## I.      DISCUSSION

The standard for granting a motion to reconsider a judgment "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); see also Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (requiring the moving party to "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked"); Smith v. New York City Dep't of Educ., 524 F. App'x 730, 734 (2d Cir. 2013) ( "To warrant reconsideration, a party must 'point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" (quoting Shrader, 70 F.3d at 257)); Smith v. Schweiloch, No. 12–CV–3253, 2012 WL 2277687, at * 1 (S.D.N.Y. June 18, 2012) ("The moving party is required to demonstrate that 'the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the court.'" (alteration omitted) (quoting Vincent v. Money Store, No. 03–CV–2876, 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011))).

In this case, the Plaintiff first contends that the Court erred in stating that "there is no mention in the complaint of the October 2008 EEO Charge, let alone that the claims predating June 20, 2010 were taken to retaliate for filing that charge." (Mem & Order, at 9-10.)  While the complaint generally accuses the "Defendant [of] forwarding the allegations of 'mishandling of evidence' and 'false statements,' merely one week after settling the [a separate] EEO complaint with Walia,[. . . as] a mere pretext to retaliate against Walia for engaging in protected EEO

8

activity." (Compl ¶¶ 25-32.), the complaint makes no specific reference to the October 2008 charge or the amendment. Alfano v. Costello, 294 F.3d 365, 382 (2d Cir. 2002) ("while Alfano's federal complaint generally alleged 'retaliatory conduct' on the part of DOCS, the pleading alleged no link between that conduct and the filing of her EEOC charge . . . . Alfano did not allege that DOCS retaliated against her for filing an EEOC charge; her vague, conclusory accusations of 'retaliatory conduct' are insufficient to meet the . . . requirement of a specific linkage between filing an EEOC charge and an act of retaliation"); Figueroa v. Napolitano, No. 11 CV 2087 (WFK)(RML), 2012 WL 3683558, at *3 (E.D.N.Y. 2012) ("while plaintiff generally accuses defendant of taking retaliatory actions, he never alleges in his proposed complaint that defendant retaliated against him for filing the EEO charges, and he provides no specific link (other than mere chronology) between the filing of his EEO complaints and the alleged subsequent discrimination")(emphasis omitted), Report and Recommendation Adopted by Figueroa v. Napolitano, 11-CV-2087 (WFK)(RML), 2012 WL 3686384 (E.D.N.Y. Aug. 24, 2012).

Further, the Court notes that the Plaintiff never mentioned the October 2008 amendment in his EEO filings and, indeed, never claimed, in his EEO filings, that he was excused from exhausting administrative remedies, but merely claimed that the claims predating June 20, 2010 were timely because they were part of a continuing violation.

In any event, the Court previously found that, even assuming the Plaintiff properly alleged that he was not required to exhaust his administrative remedies, such claims were untimely because they were not reasonably related to the October 2008 charge.  Conduct may be sufficiently related to the claims raised in an EEO charge if: 1) the conduct complained about falls within the scope of what might be reasonably expected to come out in the EEO

9

investigation prompted by the filed charge of discrimination; 2) the complaint alleges retaliation

for filing an EEO charge; and 3) the complaint alleges additional incidents of discrimination

carried out in an identical manner to those alleged in the EEO charge. Terry v. Ashcroft, 336

F.3d 128, 151 (2d Cir. 2003).  In this regard, this Court previously made the following finding:

> It is true, as the Plaintiff asserts, that he amended the October 2008 EEO charge
> by letter dated October 21, 2008 to refer to "misstated" facts in his annual
> appraisal.  While the appraisal mentioned that the Plaintiff failed to follow up on
> the seizure of the laptop computer, the EEO charge and the amendment failed to
> specify the misstatements of fact.  Accordingly, the Plaintiff's October 21, 2008
> letter did not provide the EEO with sufficient notice that would make his October
> 2008 EEO charge reasonably related to the claims predating June 20, 2010.
> Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006)
> ("the focus should be on the factual allegations made in the [EEOC] charge itself,
> describing the discriminatory conduct about which a plaintiff is grieving. The
> central question is whether the complaint filed with the EEOC gave that agency
> adequate notice to investigate . . .") (citations and internal quotation marks
> deleted).

(Mem & Order, at 10-11.)  Absent evidence or arguments overlooked, this Court declines

to disturb its previous findings. Paone v. Microsoft Corp., 07-CV-2973 (ADS), 2013 WL

4048503, at *8 (E.D.N.Y. Aug. 9, 2013)("In its motion for reconsideration, Microsoft

merely repeats the arguments that the Court previously rejected.  For this reason, the

Court declines to disturb its earlier determination and the Defendant's motion for

reconsideration on its Motion in Limine No. 4 is denied.")(Spatt, J.).

The Plaintiff now argues, for the first time, that the claims predating June 20,

2010 are reasonably related to and are the same type of conduct that he alleged in a 2006

EEO charge.  According to the Plaintiff, in 2006 the Plaintiff alleged that he was

retaliated against when DHS failed to assign him to the proper work group; deprived him

of receiving language pay; refused to promote him, and disseminated confidential

information regarding his EEO activity to other agents in violation of his privacy rights.

These allegations were the subject of another case brought by the Plaintiff against a prior secretary of the DHS, Michael Chertoff, Walia v. Chertoff, 06-CV-6587 (JBW), 2008 WL 5246014 (E.D.N.Y. Dec. 17, 2008), which settled in December 2008.  In that case, DHS moved for summary judgment arguing, as it does here, that "certain of Walia's Title VII claims must be dismissed as procedurally barred because Walia did not exhaust those claims in the EEO process." Walia, 2008 WL 5246014, at *10.  Judge Weinstein rejected DHS's argument, stating "[e]ven if the defendant is correct as to exhaustion, the unexhausted claims should be viewed at this stage of the litigation as reasonably related to those claims which have been exhausted through the administrative process." Id. at *11.

However, the Second Circuit has held that a motion for reconsideration is not the proper vehicle to raise arguments that could have been previously advanced. Adams v. Warner Bros. Pictures, 289 Fed. Appx. 456, 458 n. 2 (2d Cir. Aug.13, 2008) (holding that on a motion for reconsideration, a court should not entertain arguments not raised on the original motion); Newton v. City of New York, 738 F. Supp. 2d 397, 2010 WL 3584012, at * 11 (S.D.N.Y. Sept.14, 2010)(holding that reconsideration "is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.")(internal quotations and citations omitted).  Accordingly, the Court declines to reinstate the Plaintiff's otherwise time-barred claims on the ground that they are reasonably related to his 2006 EEO charge.

Next, relying on Joseph v. Leavitt, 465 F.3d 87 (2d Cir. 2006), the Plaintiff asserts that this Court erred in holding that his being placed on paid administrative leave on September 16, 2009 constituted a discrete act, thereby requiring the Plaintiff to contact an

EEO counselor within 45 days.  In <u>Joseph</u>, the Second Circuit held that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." <u>Id.</u> at 91.  The Second Circuit reasoned that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." <u>Id.</u>  However, the Second Circuit has also noted that "[this] is not an absolute one, and that a suspension with pay may, in some circumstances, rise to the level of an adverse employment action." <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 150 (2d Cir. 2012).

> The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment.  Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies.

<u>Joseph</u>, 465 F.3d at 92 n. 1.

Here, in the Court's view, by arguing that his placement on paid administrative leave violated DHS's own policies and was itself discriminatory, the Plaintiff essentially undercuts his claim that the placement was not a discrete act triggering Title VII exhaustion requirements.  In other words, the Plaintiff cannot simultaneously argue that his placement on paid administrative leave constituted (1) a reasonable application of DHS disciplinary procedures and, therefore, not a discrete act altering the terms and conditions of employment and (2) evidence of unlawful discrimination under Title VII.

The Court emphasizes that the day after the Plaintiff was placed on paid administrative leave, he filed an action with the MSPB complaining about this placement, belying his newly-made contention that he only learned that his placement on paid administrative leave was

actionable from facts learned during discovery.  "The rationale behind the "discrete act" rule is

that when a plaintiff is harmed by a discrete act or event, he should be aware of it." <u>Singleton v.

City of New York</u>, 632 F.2d 185, 192 (2d Cir. 1980).  Here, the Plaintiff's own version of events

makes clear that he was aware of the alleged unlawful nature of his placement on paid

administrative leave soon after it occurred.  Under these circumstances, the Court declines to

disturb its previous finding that placing the Plaintiff on paid administrative leave was a discrete

act affecting his employment. (<u>See</u> Mem & Order, at 12, citing <u>Ramos-Boyce v. Fordham Univ.</u>,

419 F. Supp. 2d 469, 472 (S.D.N.Y. 2005)).

      Finally, the Plaintiff contends that, even if the claims of discrimination at issue are based

on discrete acts that were not timely exhausted, these claims are nonetheless actionable as part of

a hostile work environment claim. "However, the Second Circuit has found that the existence of

a hostile environment claim does not revive an otherwise time-barred discrete act of

discrimination." <u>Anderson v. Nassau Cnty. Dep't of Corr.</u>, 558 F. Supp. 2d 283, 298 (E.D.N.Y.

2008)(citing <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 220 (2d Cir. 2004)); <u>accord</u> <u>Sundaram v.

Brookhaven Nat. Labs.</u>, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006).

      In this regard, the Court notes that "the statute of limitations is not an evidentiary bar; 'an

employee [may use] the prior acts as background evidence in support of a timely claim.'"

<u>Magadia v. Napolitano</u>, 06 CIV. 14386 (CM), 2009 WL 510739, at *11 (S.D.N.Y. Feb. 26,

2009), quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L.

Ed. 2d 106 (2002)).

      For the foregoing reasons, the Court grants in part and denies in part the Plaintiff's

motion for reconsideration of the Memorandum and Order dated December 2, 2013.  The Court

clarifies that order to the extent it makes clear that claims relating to events occurring on or after

June 20, 2010 remain a part of the Plaintiff's Title VII claim.  The Court otherwise denies

reconsideration.

**SO ORDERED.**
Dated: Central Islip, New York
February 4, 2014


                                    _____*Arthur D. Spatt*_____
                                         ARTHUR D. SPATT
                                    United States District Judge

14